IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRYAN MERCER, CANDACE McKINLEY, SHANEE GARNER-NELSON, ADAM BUTLER,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>KEVIN JACKSON, THE BLACK SPHERE, LLC, and MABIE MARKETING, INC., d/b/a The Campaign Solutions Group,<br><br>　　　　　　　　Defendants. | Civil Action<br><br><br><br><br><br>No. 2:20-cv-00098-JMG |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION TO STAY PROCEEDINGS**

Plaintiffs submit this memorandum of law in support of their foregoing motion requesting the Court to exercise its inherent power to manage its docket to stay this action in anticipation of the U.S. Supreme Court's pending decision in *Facebook Inc. v. Duguid*, 926 F.3d 1146 (9th Cir. 2019), *cert. granted in part*, No. 19-511, -- S.Ct. ----, 2020 WL 3865252 (Mem) (July 9, 2020), which will provide precedential authority on the statutory definition of an *automated telephone dialing system* under 47 U.S.C. § 227(a)(1). This Court recently, in an unrelated case turning on the same the legal issue, granted a stay to the proceedings at the Defendant's request pending the Supreme Court's decision. *See* Order of August 5, 2020, *Hockenberry v. Performance Recovery, Inc.*, Case No. 2:20-cv-00524, Doc. No. 12 (E.D. Pa.) (DuBois, J.).

**I.　BACKGROUND**

The named plaintiffs filed the Amended Class Action Complaint, (Doc. No. 19), (hereinafter "Amended Complaint"), on behalf of themselves and 123,848 residents of

Philadelphia.[1] Plaintiffs and putative class members were subject to identical, one-way text message blasts targeted at African Americans registered as Democrats or Independents who resided in Philadelphia, intended to elicit personal information for us in promoting Defendants' purported expertise and value to political campaigns. (Am. Compl. ¶¶ 1-3). Plaintiffs brought this action under the Telephone Consumer Protection Act, 47 U.SC. § 227(b)(1)(C), and the regulations promulgated thereunder (hereinafter referred to collectively as "TCPA"), and under the common law of Pennsylvania. (Am. Compl. ¶ 4). As relevant to this motion, Count I of the Amended Complaint specifically alleges that Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) *using any automatic telephone dialing system*… to any telephone number assigned to a … cellular telephone service." (Am. Compl. ¶ 48) (emphasis added).[2] An "automatic telephone dialing system" is statutorily defined as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

---

[1] Plaintiffs filed the original complaint in the Pennsylvania Court of Common Pleas in Philadelphia County on December 4, 2019. *Mercer v. Jackson*, No. 191200702 (Pa. Comm. Pls., Phila. Cty.).  On January 6, 2020, Defendants Kevin Jackson and Black Sphere LLC removed the case to this Court. (Doc. No. 1). Following limited discovery and pursuant to the Court's Scheduling Order of May 8, 2020, (Doc. No. 13), plaintiffs filed the Amended Complaint on June 4, 2020 (Doc. No. 15). Among other things, the proposed Amended Complaint named a new defendant, Mabie Marketing, Inc. The Court granted the motion on August 12, 2020. (Doc. No. 18). On August 26, 2020, Defendants Kevin Jackson and the Black Sphere LLC filed a motion to dismiss the Amended Complaint. (Doc. No. 20). No counsel for newly added Defendant Mabie Marketing, Inc. has entered an appearance. Under the current Scheduling Order, Plaintiffs' motion for class certification is due on September 24, 2020. (Doc. No. 13, at ¶ 5)

[2] Count II of the Amended Complaint is brought pursuant to the same statutory provision that also makes it unlawful to make a non-consensual call using "an artificial or prerecorded voice." (Am. Compl. ¶ 55).  Count III is brought under the common law tort of intrusion upon seclusion. (Am. Compl. ¶ 65). Neither of these Counts should be impacted by the Supreme Court's pending decision.

Plaintiffs have proffered numerous allegations to support Count I of the Amended Complaint. Among these, plaintiffs allege the Defendant Mabie Marketing, Inc. d/b/a The Campaign Solutions Group ("TCSG") sent 123,848 text messages to Philadelphia residents on behalf of Defendants Kevin Jackson and The Black Sphere, LLC. (Am. Compl. ¶¶ 15-23). The messages were sent to individuals that the Defendants believed to be African American voters in Philadelphia who were registered as either Democrats or Independents and made less than $100,000 per year. (Am. Compl. ¶ 24). Plaintiffs did not consent to receive these messages. Defendants acquired their phone numbers from a list they purchased from a third-party data vendor that purposed to provide the names and cell phone numbers of individuals meeting the criteria Defendants specified. (Am. Compl. ¶ 24). Unbeknownst to the recipients of these text messages, the purpose of this mass texting campaign was not to communicate with them, but rather was to induce them to send replies to be collected and classified by the Defendants for their use in planning future, subsequent privacy intrusions targeting African American voters. (Am. Compl. ¶ 25).

After limited third-party discovery, plaintiffs learned of the technical mechanisms by which the text messages were sent and included those factual allegations in the Amended Complaint. Specifically, Defendant TCSG used a cellphone-based application, RumbleUp, to blast the prerecorded messages to the phone numbers first uploaded into the system. (Am. Compl. ¶ 32). The application is designed so that after an individual user downloads the application and logs into their account, the application populates their cell phone with the prerecorded text message and with a recipient's cell phone number automatically pulled from a list of numbers pre-stored on the application's central database. (Am. Compl. ¶ 32). The prerecorded message and the number to be called would automatically appear on the TCSG

employee's screen, who would then only have to push SEND to transmit the message. (Am. Compl. ¶ 34). The text messages were not two-way communications between the sender and the recipient, but were in fact one-way communications where any responses to the original text would simply be stored in a remote database of responses. (Am. Compl. ¶ 36). The number that recipients saw was not the number of the cell phone that purportedly sent the text, but instead one of three shared phone numbers that acted to mask the actual sender and enable a centralized collection of any response by the recipient. (Am. Compl. ¶ 36). Specifically at issue in Count I of the Amended Complaint is whether these technical mechanisms of text-blasting unwanted spam to individual phone numbers randomly or sequentially selected by the RumbleUp application was accomplished with the use of an *automatic telephone dialing system* under the TCPA.

While this case was pending, on July 9, 2020, the Supreme Court granted certiorari to the legal ambiguity that has developed around the statutory definition of an "automatic telephone dialing system" and what it means to have "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." *Facebook Inc. v. Duguid*, 926 F.3d 1146 (9th Cir. 2019), *cert. granted in part*, No. 19-511, -- S.Ct. ----, 2020 WL 3865252 (Mem) (July 9, 2020).[3] The Supreme Court's determination of this issue will be dispositive as to Count I of the Amended Complaint. Indeed, Defendants' motion to dismiss relies precisely on this point as to Count I, that Defendant's technical apparatus for the bulk sending of unsolicited and intrusive text messages does not constitute an automatic telephone dialing system because

---

[3] The precise question to be decided by the Supreme Court (Question No. 2) in the certiorari petition is: "Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'"

4

plaintiffs "have not alleged that list [of cellphone numbers] was generated randomly or sequentially." (Doc. No. 20-1, at 8).

## II. LEGAL STANDARDS

"Incidental to a court's power to schedule and dispose of the cases on its docket, is the power to stay the proceedings before it when it promotes the fair and efficient adjudication of a case." *Grider v. Keystone Health Plan Central, Inc.*, No. 2001-CV-05641, 2017 WL 9734118, at *1 n.1 (E.D. Pa. Jan. 22, 2007) (citing *United States of America v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994)). "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp. v. Laborers' International Union,* 544 F.2d 1207, 1215 (3d. Cir. 1976). The party requesting a stay bears the burden of showing that a stay is warranted. *See City of New Castle v. Purdue Pharma L.P.*, No. 18-1472, 2018 WL 3438841, at *2 (E.D. Pa. July 16, 2018); *see also Nken v. Holder*, 556 U.S. 418, 433-34 (2009). In analyzing motions to stay, federal courts consider the following three factors: (1) the promotion of judicial economy; (2) the balance of harm to the parties; and (3) the duration of the requested stay. *See City of New Castle*, No. 18-1472, 2018 WL 3438841, at *2; *see also Cirulli v. Bausch & Lomb, Inc.*, No. 08-4579, 2009 WL 545572, at *2 (E.D. Pa. Mar. 4, 2009); *Ciolli v. Iravani,* No. 08-2601, 2008 WL 4412053, at *2 (E.D. Pa. Sept. 23, 2008).

## III. ARGUMENT

In the current litigation, all three factors relevant to determining whether the Court should exercise its discretion to stay proceedings, while the Supreme Court decides a case that is likely to provide binding, dispositive guidance on a legal issue central to Count I of Plaintiffs' Amended Complaint, are present. First, staying the proceedings will promote judicial economy by conserving the Court's resources and saving both this Court and, potentially, the Court of

5

Appeals the time, effort, and resources of having to rule multiple times on a legal issue that the Supreme Court will be issuing binding precedent on shortly. Second, staying the proceedings will not prejudice either party in any way. In fact, the parties will benefit from being saved the time, effort, and resources related to discovery and motion practice over legal issues whose final contours will only be determined after the Supreme Court's ruling. Third and finally, because the Supreme Court has granted certiorari for the October 2020 term, there is a clearly defined endpoint for the stay, likely to come before spring or early summer 2021, that implies the stay will only be necessary for a matter of months. In addition, this Court recently, in an unrelated case deciding this specific issue, granted a stay to the proceedings at the Defendant's request pending the Supreme Court's decision. *See* Order of August 5, 2020, *Hockenberry v. Performance Recovery, Inc.*, Case No. 2:20-cv-00524, Doc. No. 12 (E.D. Pa.) (DuBois, J.).

### A. **A Stay of Proceedings Will Promote Judicial Economy**

The Supreme Court's grant of certiorari in *Facebook, Inc. v. Duguid* promises to resolve a circuit split in the interpretation of the statutory language of TCPA § 227(a)(1) as to what precisely defines an *automatic telephone dialing system*.[4] In the case before the Supreme Court, Facebook is appealing the Ninth Circuit's holding that "an ATDS need not be able to use a random or sequential generator to store numbers—it suffices to merely have the capacity to 'store numbers to be called' and 'to dial such numbers automatically.'" 926 F.3d at 1151 (citing *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018)). This fits precisely with

---

[4] To underline the dispute over the precise statutory meaning of the term, the Federal Communications Commission also has an ongoing rulemaking regarding the definition. FCC Public Notice, DA-18-1014A1, https://docs.fcc.gov/public/attachments/DA-18-1014A1.pdf (Oct. 3, 2018). Plaintiffs do not anticipate that the FCC will issue a rule prior to the Supreme Court's decision.

Plaintiffs' allegations, detailed above, that Defendants used an application that stored a list of numbers to be called and provided a mechanism to dial such numbers automatically.

At present the Second and Ninth Circuit Courts of Appeals have endorsed this interpretation of the statutory language of the TCPA. *See Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 289-90 (2d Cir. 2020); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018). While the Third, Sixth, Seventh, and Eleventh Circuit Courts of Appeals have held a more restrictive interpretation of the statutory language. *See Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 118-19 (3d Cir. 2018); *Gary v. Trueblue, Inc.*, 786 Fed. Appx. 555, 557-58 (6th Cir. 2019); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 460 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1304-06 (11th Cir. 2020).

Although the Third Circuit's decision in *Dominguez* would normally provide precedential authority on this specific legal issue, the fact that the Supreme Court may clarify, modify, or overrule *Dominguez* in the next several months makes it prudent to stay the proceedings until that decision is reached. The pending motion to dismiss, Doc. No. 20—to which Plaintiffs have not yet filed a response—makes it clear the extent to which the precise legal question being considered by the Supreme Court is the one at issue in Count I of the Plaintiffs' Amended Complaint. Indeed, Defendants' motion as to Count I hinges on the argument "that an ATDS must have the present capacity to use a random or sequential number generator *to produce and dial* the telephone numbers to be called," (Doc. No. 20-1, at 7) (emphasis added), *i.e.,* that a mechanism which randomly or sequentially dialed pre-stored telephone numbers would not constitute an ATDS.

Additionally, Plaintiffs' motion for class certification is currently due on September 24, 2020 (Doc. No. 13, at ¶ 5). It would be a waste of all parties resources to fully litigate the

pending motion to dismiss and anticipated motion for class certification, as well as a waste of the Court's resources to rule on these motions, if there is a substantial likelihood that the Supreme Court will clarify, modify, or overrule the definition of an *automatic telephone dialing system* as held by *Dominguez*. No matter what decision this Court might take on these motions, they may be subject to motions for reconsideration and appeal in light of the Supreme Court's subsequent ruling. And, indeed, the parties may be more likely to move to settlement discussions after they have a more conclusive understanding of the strength of Plaintiffs' claims in Count I of the Amended Complaint as determined by the Supreme Court's decision.

### B. **Neither Party Will Be Harmed by a Stay**

The second factor in the analysis regarding the balance of harms if a stay is ordered also favors the issue of the stay because neither party will suffer any harm or prejudice by the stay. This case is in its early stages. Defendants Kevin Jackson and The Black Sphere LLC filed a motion to dismiss on August 26, 2020. (Doc. No. 20-1). Plaintiffs have not yet responded. Defendant Mabie Marketing, Inc. has yet to appear in the case. There is no identifiable harm that would accrue to either Plaintiffs or Defendants from these proceedings being stayed and any motions, settlement discussions, or dispositive orders being delayed by a matter of months. On the contrary, the most likely harm to parties as discussed above would be from being required to proceed through litigation, engage in further discovery, and pursue additional motions practice absent authoritative clarification from the Supreme Court of TCPA § 227(a)(1).

### C. **The Anticipated Duration of the Stay Does Not Extend Beyond the Supreme Court's Current Term**

The Supreme Court granted certiorari in *Facebook Inc. v. Duguid* on July 9, 2020 for hearing in its October 2020 term. 926 F.3d 1146 (9th Cir. 2019), *cert. granted in part*, No. 19-511, -- S.Ct. ----, 2020 WL 3865252 (Mem) (July 9, 2020). The Supreme Court is likely to

render a decision by spring or early summer of 2021 at the latest. A delay of several months is not uncommon in litigation for a variety of reasons, and it is certainly not uncommon where the interests of judicial efficiency without prejudice to either party weigh so heavily in favor of such a stay.

**IV.     Conclusion**

Plaintiffs respectfully request that the Court grant their Motion to Stay pending a decision from the United States Supreme Court in *Facebook, Inc. v. Duguid* on a legal question which will likely have a dispositive impact on the outcome of Count I of the Plaintiffs' Amended Complaint.

Respectfully submitted,

Dated: September 3, 2020

*/s/ Irv Ackelsberg*
Irv Ackelsberg
David A. Nagdeman
LANGER GROGAN & DIVER, PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
(215) 320-5660

James A. Francis
David Searles
FRANCIS MAILMAN SOUMILAS, PC
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600

*Attorneys for the Plaintiffs*